

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | No.: 3:01-CV-618-T |
| | § | No.: 3:98-CR-381-T |
| | § | |
| NITIN SHETTY | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the United States District Court for the Northern District of Texas, this case has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge follow:

### FINDINGS AND CONCLUSIONS:

**Type case:**

Petitioner seeks to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.

**Parties:**

Petitioner is a federal prisoner currently incarcerated in a federal correctional institution at Reno, Oklahoma. Respondent is the United States of America.

**Procedural Background:**

Petitioner was indicted on November 10, 1998. He was charged with: (1) conspiracy to smuggle aliens into the United States in violation of 8 U.S.C. § 371; (2) conspiracy to launder money internationally in violation of 18 U.S.C. § 1956(h); (3) money laundering in violation of 18 U.S.C. § 1956(A)(i); and (4) substantive counts of smuggling aliens into, and transporting

them within, the United States in violation of 8 U.S.C. § 1342. On April 15, 1999, Petitioner pled guilty to conspiracy to launder money internationally in violation of 18 U.S.C. § 1956(h). Petitioner was sentenced to one hundred twenty months in prison, a three-year term of supervised release, and One Hundred Dollars mandatory special assessment. In his plea, Petitioner agreed to an 11(e)(1)(C) sentence of one hundred twenty months, which is what he received. Judge Maloney accepted the plea agreement and sentenced him accordingly. Further, in the plea agreement, Petitioner agreed to waive appeal and post-conviction relief except for claims of ineffective assistance of counsel. Petitioner filed a notice of appeal. On March 1, 2000, the Court of Appeals issued a dismissal notice for failure to file a sufficient brief and subsequently dismissed the appeal for want of prosecution. On March 30, 2001, Petitioner filed this petition to vacate, set aside or correct sentence.

**Factual Background:**

Beginning on or about January of 1997, until the time of his arrest in November of 1998, Petitioner was the leader of an organization that had as its goals the illegal smuggling of aliens from India, through Ecuador, Haiti, Cuba, and The Bahamas, and into the United States. Petitioner's role in the organization included:

1. Coordinating the recruitment and travel of aliens from India, to Ecuador, and The Bahamas;

2. Harboring, or directing others to safeguard, aliens in those countries until they could be smuggled into the United States;

3. Maintaining, or directing others to maintain, "stash houses" in the United States, to be used for holding aliens until the aliens' smuggling fees were paid, and for storing collected smuggling fees until the money could be transported back to Petitioner;

4. Coordinating directly with other smugglers, or directing other smugglers, to transport aliens to the United States by boats and aircraft;

5. Arranging for, or directing others to arrange for, the domestic distribution of smuggled aliens upon reaching the United States;

6. Collecting, or directing the collection of, smuggling fees paid to the organization, via money wire transfer, personal couriers, or through co-defendant Gunvantla Shah's illegal money remittance business, after smuggled aliens arrived in the United States.

From on or about February of 1997, and continuing through November of 1998, Petitioner arranged with co-defendants Mahendra Patel and Naresh Panchal, and others, to recruit prospective clients in India, who would be smuggled to the United States. These aliens were sent from India, to Russia, and Caribbean Island Countries, with a few being sent to Ecuador, and then smuggled to the United States. During this time period, Petitioner smuggled, or attempted to smuggle, in excess of 400 aliens into the United States, charging up to $15,000.00 per alien.

Beginning in February of 1998, and continuing until about May of 1998, Petitioner directed the operation of a "stash house" in Jersey City, New Jersey. During this time period, Petitioner worked with co-defendant Bertice Thompson, a/k/a "Tommy," a Royal Bahamian Police Officer, and others, to arrange for the entry of Indian aliens into The Bahamas. From The Bahamas, Petitioner would arrange for the smuggling of aliens from The Bahamas, by both cruise ships and private vessels, to South Florida.

On or about May 10, 1998, agents of the Immigration and Naturalization Service ("INS") executed a search warrant at Petitioner's "stash house" in New Jersey. Approximately $360,000.00 in U.S. Currency, that had been collected in smuggling fees, was seized. Approximately 23 smuggled aliens were also arrested at the stash house, while awaiting payment

of their smuggling fees prior to being released. Petitioner also directed co-conspirators to convert the smuggling proceeds into cashiers checks purchased from various banks, and to send the checks via Federal Express Delivery Service to an associate in Guayaquil, Ecuador. Approximately $125,000.00 in cashiers checks were seized along with the currency on May 10, 1998.

Beginning in May of 1998, and continuing until November of 1998, Petitioner employed co-defendant Abdul Subhan Farooqui, a/k/a "Gulu," ("Farooqui") to maintain day-to-day operations of the smuggling activities in Nassau, The Bahamas. During this time period, Petitioner, or co-defendant Farooqui acting at Petitioner's direction, had numerous telephone conversations with co-defendant Gunvantla Shah and others. During these conversations, Petitioner directed the collection of smuggling fees by co-defendants, as well as the delivery of smuggled aliens.

On several occasions, Petitioner instructed co-defendants Gunvantla Shah and/or Shrenik Shah, a/k/a "Kumar" (Gunvantla Shah's son-in-law), to collect smuggling fees at their residence in North Bergen, New Jersey. Petitioner would then send co-defendants Navin Patel and Paresh Patel to that residence to collect the smuggling fees.

Petitioner directed the relatives of smuggled aliens to deliver smuggling fees to co-defendants and co-conspirators, at various locations throughout the United States. Petitioner then directed other organizational members, including co-defendant Bertice Thompson, to travel from The Bahamas to the United States, collect smuggling fees and transport the fees back to him, or, in his absence, Farooqui, in The Bahamas.

Upon receiving delivery of the collected smuggling fees in The Bahamas, Petitioner would then reinvest the money to promote additional endeavors to smuggle more aliens. On two separate occasions, Petitioner provided co-defendant Thompson, and another co-conspirator, with approximately $12,500.00, and $30,000.00, in alien smuggling proceeds, to purchase vessels to smuggle more aliens from Freeport, The Bahamas, to South Florida.

On or about September 29, 1998, Petitioner and co-defendant Naran Patel met with INS Special Agents, who were acting in undercover capacities as alien smugglers. During the meeting, which took place in Quito, Ecuador, Petitioner discussed with the undercover agents establishing a "monopoly" regarding the smuggling of Indian aliens from Ecuador to the United States. Petitioner also discussed smuggling routes, fees, and the potential use of Ecuadorian Passports by aliens being smuggled to the United States by his organization.

At some time during October of 1998, Petitioner instructed co-defendant Farooqui to meet with INS undercover agents in Nassau, The Bahamas, for the purpose of establishing a method to smuggle aliens via private aircraft from Nassau, The Bahamas, to the United States.

On October 23, 1998, co-defendant Farooqui, at the direction of Petitioner, met with INS undercover agents in Nassau, The Bahamas. Petitioner later learned that co-defendant Nelson Hanna was also at the meeting. The purpose of the meeting was to discuss bringing illegal aliens into the United States.

Throughout 1998, Petitioner employed co-defendant Hanna as a pilot to transport Indian nationals from Caribbean islands or countries who were destined for the United States. Co-defendant Hanna was aware that Petitioner was an alien smuggler, and that the aliens he was transporting for Petitioner would eventually enter the U.S. illegally from The Bahamas.

On or about October 24, 1998, Petitioner, along with co-defendants Hanna and Farooqui, arranged for five Indian aliens to be smuggled aboard a small private jet aircraft from Nassau, The Bahamas, to the United States, arriving in Dallas, Texas.

On or about October 24, 1998, Petitioner instructed co-defendant Farooqui to arrange for the collection of smuggling fees from the relatives of the five aliens who had been smuggled to Dallas, Texas. Petitioner further instructed co-defendant Farooqui to contact co-defendant Paresh Patel in Staten Island, New York, and to direct Paresh Patel to wire transfer $4,100.00 to an undercover INS agent in Dallas, Texas, to pay the transportation expenses for the smuggled aliens.

On or about October 26, 1998, Petitioner, or others acting at Petitioner's direction, instructed co-defendant Paresh Patel to obtain and send 22 money orders totaling $10,000.00 from New Jersey to the undercover agent in Dallas, Texas, via Federal Express Delivery Service, as payment for smuggling the five aliens from Nassau to the United States.

On or about October 30, 1998, Petitioner instructed co-defendants Farooqui and Navin Patel to deliver $50,000.00 to undercover agents at co-defendant Navin Patel's business in Staten Island, New York. The money was intended as an advanced payment for the future smuggling of other aliens from The Bahamas and Ecuador to the United States.

From on or about November 1, 1998, until on or about November 7, 1998, Petitioner, through co-defendant Thompson and other co-conspirators, operated a stash house in Miami, Florida. On November 7, 1998, INS agents executed a search warrant at this stash house, and arrested approximately eleven illegal Indian aliens, and seized approximately $20,000.00.

At the time of his arrest on or about November 14, 1998, Petitioner had approximately 29 Indian aliens, and two Ecuadorian aliens, at a stash house in Nassau, The Bahamas, all of which were destined to the United States.

All in violation of Conspiracy to Launder Monetary Instruments under Title 18, United States Code, Section 1956(a)(2)(A) & (h) (Specified Unlawful Activity under Title 8, United States Code, Sections 1324(a)(1)(A)(ii) & (v) and (a)(2)(B)(ii)); and Conspiracy to Bring Illegal Aliens into the United States under Title 18, United States Code, Section 371 (Title 18, U.S.C., Sections 1324(a)(1)(A) (ii) & (v) and (a)(2)(B)(ii)).

## ISSUES PRESENTED

Petitioner alleges the following grounds for relief:

1. Whether the government breached its plea agreement by advocating that $15,000.00 was the minimum charge by Petitioner to each smuggled alien;

2. Whether Petitioner's due process right was violated where the court sentenced Petitioner based on inaccurate information;

3. Whether venue was proper in the Northern District of Texas to prosecute Petitioner for the offense of money laundering under 18 U.S.C. § 1956(a)(2)(h);

4. Whether the District Court's acquisition of jurisdiction after Petitioner was illegally arrested in violation of his right under the Fourth Amendment to the Constitution warrants reversal of his conviction;

5. Whether Petitioner was denied effective assistance of counsel.

6. Whether the court had authority to depart downward because this case is atypical under the *Heartland* language at the introductory chapter of the Sentencing Guidelines.

In his supplemental petition, Petitioner raised the following issues:

7. Petitioner was deprived of effective assistance of counsel at the guilty plea and sentencing stages of the proceeding by counsel's failure to ascertain the law in relation to the facts in advising the petitioner to plead guilty and in failing to object to the erroneous computations of the guideline offense level; and, finally,

8. Petitioner's plea was not voluntarily, intelligently, or knowingly entered since he did not have an understanding of the law in relation of the facts due to the failure of the court to explain the essential elements of the crime to him.

### Scope of Review

The scope of post-conviction relief pursuant to 28 U.S.C. § 2255 is limited. Issues raised and decided on appeal from a judgment of conviction are not considered in § 2255 motions. *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985). The statute affords judicial review only for constitutional errors and other issues that (1) could not have been raised on direct appeal and (2) will result in a miscarriage of justice if left unaddressed. *See United States v. Faubion,* 19 F.3d 226, 233 (5th Cir. 1994). Misapplications of the Sentencing Guidelines do not fall into either category and hence are not cognizable in § 2255 motions. *See United States v. Segler,* 37 F.3d 1131, 1134 (5th Cir.1994); *Faubion,* 19 F.3d at 233. Before a petitioner may raise an issue for the first time in a § 2255 proceeding, he must show "cause" for his procedural default in failing to raise the issue on appeal and "actual prejudice" resulting from the error. *United States v. Frady*, 456 U.S. 152, 168 (1982); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991), *cert. denied*, 502 U.S. 1076 (1992). This high hurdle ensures that final judgments command respect and that their binding effect is not disturbed by an endless series of post-conviction collateral attacks. *Frady*, 102 S. Ct. at 1593. The cause and prejudice test may be satisfied if it appears that counsel was ineffective. *See United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995); *see also United States*

*v. Patten*, 40 F.3d 774, 775 (5th Cir. 1994), *cert. denied*, 515 U.S. 1132 (1995). Moreover, ineffective assistance of counsel may constitute an independent basis for post-conviction relief. *See United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *see also Shaid*, 937 F.2d at 232.

### Claims 1, 2, 3, 4 and 6

With the exception of Petitioner's ineffective assistance claims, Petitioner has waived his right to appeal his conviction, except in very limited circumstances. By signing and accepting the plea agreement with the government, Petitioner agreed not to contest his sentence in any post-conviction proceeding including, but not limited to, proceeding pursuant to 28 U.S.C. § 2255, if that sentence was within or below the guideline range as determined by the court. Since this was a plea under 11(e)(1)(C) and the court accepted the plea and sentenced Petitioner to exactly what he had agreed to, he has waived his right to appeal all collateral issues. Petitioner is therefore collaterally estopped from asserting his claims Numbered 1, 2, 3, 4, and 6.

### Ineffective Assistance of Counsel

Petitioner argues he received ineffective assistance of counsel because counsel: (1) failed to learn the facts and familiarize himself with the law of Petitioner's case in advising Petitioner to plead guilty; (2) failed to notice and object to the court's misapplication of the sentencing guidelines; and (3) failed to know the facts of Petitioner's abduction from the Bahama's and the violation of his Fourth Amendment rights.

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. U.S. CONST., art. VI. To merit relief pursuant to § 2255 on a claim of ineffective assistance of counsel, a

9

petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 691 (1984). In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance, or that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

A petitioner's failure to establish either prong of the *Strickland* test requires the court to find that counsel's performance was not constitutionally ineffective; hence, courts are free to review ineffective assistance claims in any order and need not address both the "deficient" and "prejudice" prong if one component is found lacking. *Strickland*, 466 U.S. at 697. The prejudice prong of the *Strickland* test requires a petitioner to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

### (A) Failure to investigate the facts and be familiar with the law

Petitioner makes general allegations that his counsel was ineffective for failing to investigate the facts be familiar with the law. Petitioner also argues his counsel failed to know the facts of his abduction from the Bahama's and the violation of his Fourth Amendment rights. To establish that counsel was ineffective for failing to investigate the law or the facts, a petitioner must do more than merely allege a failure to investigate – he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial. *See Anderson v. Collins*, 18 F.3d 1208,

1221 (5th Cir. 1994). Petitioner states no facts regarding an alleged abduction, nor does he explain what facts would have been discovered and how it would have benefitted his case. Petitioner's conclusory allegations of ineffective assistance of counsel fail to raise a colorable basis for habeas corpus relief. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional claims in habeas proceedings). Petitioner's claims are without merit and should be denied.

**(B)     Failure to notice and object to the court's misapplication of the sentencing guidelines**

Petitioner argues the Court unlawfully sentenced him under the money laundering guideline rather than the lower alien smuggling guideline. Petitioner also argues the base offense level was unlawfully enhanced based on inaccurate information. Petitioner raises these claims under the guise that his trial counsel provided ineffective assistance of counsel. Petitioner argues his counsel should have objected to the Court's application of the sentencing guidelines.

His petition and reply, however, are no more than an attempt to convince the Court that the trial court erred in the calculations. The District Court's technical application of the sentencing guidelines does not give rise to a constitutional issue cognizable under 28 U.S.C. § 2255. *Segler*, 37 F.3d at 1134; *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). Accordingly, Petitioner's claims that he received ineffective assistance of counsel because counsel failed to object to the trial court's application of the sentencing guidelines is without merit.

## **Petitioner's plea was not voluntary**

Petitioner argues his guilty plea was not voluntary because the court failed to explain the essential elements of the crime. Under Federal Rule of Criminal Procedure 11, before the court accepts a guilt plea, the court must inform the defendant of the nature of the charges against him. A guilty plea will be upheld on habeas review if it was entered into knowingly, voluntarily and intelligently. *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). To be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequences." *United States v. Hernandez*, 234 F.3d 252, 255 (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). The defendant need only understand the direct consequences of the plea; he need not be made aware of every consequence that, absent a plea of guilty, would not otherwise occur. *Hernandez*, 234 F.3d at 255 (citations omitted).

In this case, the record shows Petitioner told the court that heard and understood the charges against him. Tr. 6: 17-20. The court informed Petitioner that he had the right to plead not guilty and have a trial. Tr. 7: 13-15. Petitioner stated he understood. Tr. 7:16. Petitioner was advised of the penalty range for the offense. Tr. 9: 7-17. Petitioner stated that he understood. Tr. 9:22. The government read the plea agreement into the record and Petitioner stated he agreed with and understood the plea agreement. Tr. 15: 11. Petitioner stated he discussed the plea agreement with his attorney before signing it, and that he felt he understood all of the provisions of the agreement. Tr. 15: 8-23. The government read the factual resume for and Petitioner stated he agreed that those were the facts of the case. Tr. 16: 14-25. The Court finds that under Federal Rule of Criminal Procedure 11, the trial court followed the necessary

procedures and properly determined that Petitioner's guilty plea was entered into knowingly, voluntarily and intelligently.

Further, any variance from Rule 11 is analyzed under a harmless error standard. *See* Fed. R. 11(h). Under the harmless error analysis, the court determines whether (1) the trial court failed to comply with the rule; and (2) if so, whether this noncompliance affected the defendant's substantial rights such that knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty. *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (en banc). In this case the Court finds the trial court complied with Rule 11, and further, that if any noncompliance existed, it did not affect Petitioner's knowledge and comprehension regarding his decision to plead guilty. Petitioner's claims are therefore without merit and should be denied.

## RECOMMENDATION

Movant's motion to vacate, set aside or modify his conviction and sentence pursuant to 28 U.S.C. § 2255 should be **DENIED**. All pending motions should be **DENIED**.

Signed, _June 4_, 2002.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. See *Thomas v. Arn*, 474 U.S. 140, 150, (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE